**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>TONY JOHN EVANS,<br><br>           Defendant. | Crim. Action No. 18-103 (EGS) |

**MEMORANDUM OPINION AND ORDER**

Defendant Tony John Evans ("Mr. Evans"), who has served less than twenty-two percent of his sixty-month sentence for interference with interstate commerce by extortion, moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). *See generally* Def.'s Mot. for Compassionate Release ("Def.'s Mot."), ECF No. 229.[1] Mr. Evans, proceeding *pro se*, is currently incarcerated at the Federal Correctional Institution in Danbury, Connecticut ("FCI Danbury"), which is a facility experiencing a COVID-19 outbreak. The Attorney General has recognized FCI Danbury as one of the Bureau of Prisons ("BOP") facilities experiencing "significant levels of infection" among inmates and staff. Office of the Att'y Gen., Mem. for Dir. of BOP, *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020), Gov't's Ex. B, ECF No. 223-2 at 2.

---

[1] When citing electronic filings throughout this Opinion, the Court cites to the ECF page number, not the page number of the filed document.

Pending before the Court is Mr. Evans' Motion for Compassionate Release. The government opposes his motion, arguing that: (1) Mr. Evans fails to satisfy the requirements for compassionate release; and (2) this Court lacks the authority to direct BOP to transfer Mr. Evans to home confinement. Gov't's Opp'n, ECF No. 232 at 1-2. Upon careful consideration of the parties' submissions, the applicable law, and the entire record herein, the Court concludes that compassionate release is inconsistent with the applicable sentencing factors set forth in 18 U.S.C. § 3553(a). Therefore, Mr. Evans' motion is **DENIED**.

Under the compassionate release statute, as amended by the First Step Act, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (2018), the Court may reduce a defendant's term of imprisonment, "after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction" and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). By its terms, the Court may reduce a term of imprisonment "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of

Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id*. § 3582(c)(1)(A).

Before turning to the requirements for compassionate release, the Court briefly summarizes the relevant litigation pending in the United States District Court for the District of Connecticut. *See Martinez-Brooks v. Easter*, No. 3:20-CV-00569 (MPS), 2020 WL 2405350, at *32 (D. Conn. May 12, 2020) (granting in part and denying in part the petitioners' motion for temporary restraining order against FCI Danbury). In *Martinez-Brooks v. Easter*, a putative class action filed as a petition for a writ of habeas corpus under 28 U.S.C. § 2241, four inmates at FCI Danbury sought to represent a class of all male and female inmates, as well as a subclass of "medically vulnerable" inmates consisting of individuals who are at heightened risk for serious illness or death from COVID-19. *Id*. at *1-*2.

Judge Michael P. Shea found that the Warden of FCI Danbury "is not making adequate use of [her] authority" to "remove medically vulnerable inmates from the dangerous environment at FCI Danbury," and neither "implementing Section 3582(c)(1)(A) in the way Congress intended when it adopted the First Step Act," nor making "any noticeable effort to update the process for evaluating 'compassionate release' requests to take account of

3

the COVID-19 pandemic." *Id.* at *24. As such, Judge Shea concluded that the "[p]etitioners have shown a likelihood of success on the merits on their claim that the [r]espondents are displaying deliberate indifference in violation of the Eighth Amendment." *Id.*

Judge Shea found that the "medically vulnerable" subclass members made a showing of irreparable harm because the alleged constitutional violation constitutes irreparable harm and the "inmates live and sleep in large dormitories lined with bunk beds" posing a "grave risk" to them and making it impossible to "institut[e] effective social distancing[.]" *Id.* at *27. Judge Shea found that the final two factors—the balance of the equities and the public interest—weighed in favor of the petitioners. *Id.* at *27-*31. Judge Shea issued a Temporary Restraining Order to "accelerat[e] the process for evaluating inmates for home confinement and compassionate release, and focus[] that process on achieving a 'reasonable' balance between the risks to inmate safety and the risks to public safety." *Id.* at *32. Judge Shea ordered BOP to provide a list of medically vulnerable inmates at FCI Danbury. *Id.*

Mr. Evans urges this Court to reconsider its prior decisions denying his motions for release from custody in light

4

of *Martinez Brooks v. Easter*. Def.'s Mot., ECF No. 229 at 11.[2] Mr. Evans contends—and the government does not dispute—that he is a member of the "medically vulnerable" subclass. *See id.* at 9; *see also* Gov't's Opp'n, ECF No. 232 at 10-11. Indeed, the government confirms that "[t]he parties in *Martinez-Brooks v. Easter* identified [Mr. Evans] as being at higher risk for severe illness from COVID-19 due to his severe obesity (i.e., BMI [Body Mass Index] of 40 or higher)." Gov't's Opp'n, ECF No. 232 at 10.

At this Court's direction, BOP assessed Mr. Evans' risk factors and determined his eligibility to serve his sentence in home confinement rather than at FCI Danbury during the COVID-19 pandemic. *See id.* at 8. On April 10, 2020, BOP found that Mr. Evans was ineligible for home confinement for three reasons: "(1) [his] primary offense is listed as a crime of violence, which presents a greater security public safety factor; (2) [his] pattern risk score (risk of recidivism) is low (and not minimum); and (3) [he] only has completed 18.3 percent (not 50 percent) of his sentence." *Id.* at 8-9; *see also id.* at 9 n.5 ("As of June 4, 2020, [Mr. Evans] has served only 21.4 percent of his sentence.").

---

[2] The Court will not construe the *pro se* motion as a motion for reconsideration because Mr. Evans, through counsel, made clear that his motions for release from custody did not seek compassionate release under 18 U.S.C. § 3582(c)(1)(A). *See* Def.'s Mot. for Release from Custody, ECF No. 222 at 5-6; *see also* Gov't's Opp'n, ECF No. 232 at 18-19.

On May 20, 2020, the Warden of FCI Danbury denied Mr. Evans' request for a sentence reduction because: (1) he has "not shown evidence of a terminal illness"; (2) he has "not been diagnosed with a terminal illness with an end of life trajectory nor 18 month life expectancy"; and (3) he is "currently being treated for sleep apnea, essential hypertension and obesity which [are] currently being managed by FCI Danbury medical." Gov't's Ex. A, ECF No. 232-1 at 2. The Warden of FCI Danbury further explained that Mr. Evans was ineligible for home confinement under the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") because he was "convicted of a crime of violence, [he has] not served 50% of [his] sentence, [he has] greater than 18 months remaining and [he is] currently a low risk of recidivism." *Id*.

Against this backdrop, the Court turns to the statutory exhaustion requirement for compassionate release. The government argues that Mr. Evans has failed to exhaust his administrative remedies. Gov't's Opp'n, ECF No. 232 at 18. The government notes that it has taken the position that the exhaustion requirement was waivable. *Id*. at 20 n.12. The government takes the opposite view in this case, relying on persuasive authority that holds the exhaustion requirement "presents a glaring roadblock foreclosing compassionate release at this point." *Id*. at 19 (quoting *United States v. Raia*, 954 F.3d 594, 597 (3d Cir.

2020)). "In the District of Columbia, every court that has considered the jurisdictional or non-jurisdictional nature of the mandate . . . has consistently concluded that section 3582(c)(1)(A)'s exhaustion requirement is *not* jurisdictional and is thus subject to equitable waiver by the court." *United States v. Johnson*, No. 15-cr-125 (KBJ), 2020 WL 3041923, at *3 (D.D.C. May 16, 2020) (collecting cases).

Here, it is undisputed that the Warden of FCI Danbury denied Mr. Evans' request for a sentence reduction. *See* Gov't's Ex. A, ECF No. 232-1 at 2. "Regardless of whether this rejection has fulfilled Section 3582(c)'s exhaustion requirement, the Court concludes that requiring [Mr. Evans] to exhaust [his administrative remedies] would cause an unnecessary delay contrary to the purposes of the First Step Act." *United States v. Wheeler*, No. 19-cr-85 (ESH), 2020 WL 2801289, at *2 (D.D.C. May 29, 2020). Accordingly, the Court will proceed to the merits of Mr. Evans' motion.[3]

---

[3] Mr. Evans requests the appointment of counsel and "more time to address this matter." Def.'s Reply, ECF No. 236 at 1. And Mr. Evans asserts that defense counsel no longer represents him. *Id*. The docket, however, indicates that defense counsel has not filed a motion to withdraw under Local Criminal Rule 44.5(d). *See generally* Docket for Crim. Action No. 18-103. Nonetheless, there is no constitutional right to appointed counsel in post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). The Court may exercise its "discretion to appoint counsel in proceedings under 18 U.S.C. § 3582(c) if the interests of justice so require." *United States v. Richardson*, No. 18-cr-507-LFL, 2020 WL 2200853, at *1 (E.D.N.C. May 6,

7

On the merits, the Court is persuaded that Mr. Evans' serious medical conditions, in conjunction with the ongoing COVID-19 pandemic and the active COVID-19 outbreak in FCI Danbury, qualify as "extraordinary and compelling reasons" justifying his release under Section 3582(c)(1)(A)(i). Contrary to the government's contention, Mr. Evans has met his burden. *See* Gov't's Opp'n, ECF No. 232 at 27. As the government correctly points out, the Sentencing Commission's applicable policy statement delineates the specific circumstances that constitute "extraordinary and compelling reasons." *Id.* (citing U.S.S.G. § 1B1.13, cmt. n.1(A)). One such circumstance is where a defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, cmt. n.1(A)(ii). Mr. Evans clears this hurdle.

Mr. Evans asserts that he suffers from severe obesity, high blood pressure, hypertension, and sleep apnea. Def.'s Mot., ECF

---

2020); *cf.* 18 U.S.C. § 3006A(a)(2)(B) (providing interests-of-justice standard for appointment of counsel in similar post-conviction proceedings). Because the issues presented in the parties' submissions are straightforward, the Court finds that the interests of justice do not compel the appointment of counsel or additional time in this matter. Accordingly, Mr. Evans' requests are DENIED.

No. 229 at 9-10. Mr. Evans claims that he has an autoimmune disease. *Id*. at 10. And he is prescribed Aspirin for stroke and Hydrochlorothiazide for water retention. *Id*. However, Mr. Evans' medical records do not support his claims of autoimmune disease and stroke. *See* Gov't's Opp'n, ECF No. 232 at 28-29. The government takes issue with Mr. Evan's medical conditions, which have not been identified by the Centers for Disease Control and Prevention ("CDC") as creating a "high-risk" for severe illness due to COVID-19. *Id*. at 29. For example, Mr. Evans suffers from "essential (primary) hypertension," but the government points out that "CDC guidance reflects that *pulmonary* hypertension constitutes a serious heart condition that places an individual at increased risk [from COVID-19]." *Id*. (citation omitted).

The government acknowledges the fact that Mr. Evans is obese, but the government contends that only "severe obesity (BMI of 40 or higher)" qualifies as one of the conditions identified by the CDC. *Id*. at 30. According to the government, Mr. Evans' weight falls outside of the category of "severe obesity" because "he weighed 282.8 pounds on June 4, 2020, which, at a height of 6'1'', results in a BMI of 37.3." *Id*. (citation omitted).[4] Mr. Evans claims that he is 5'9'' based on

---

[4] On June 25, 2020, the CDC revised its guidance for certain underlying medical conditions based on new data about COVID-19. *See* CDC, *People Who Need Extra Precautions: People of Any Age With Underlying Medical Conditions*, https://perma.cc/PG9V-ESDM.

his BOP identification card. Def.'s Reply, ECF No. 236 at 1. The medical records show that Mr. Evans is 6'1'' (or 185.4 centimeters). Gov't's Sealed Ex. F, ECF No. 233-6 at 7.

At the time of sentencing, Mr. Evans weighed 360 pounds. Presentence Investigation Report ("PSR"), ECF No. 99 at 22 ¶ 98. The government correctly notes that Mr. Evans weighed 350 pounds in May 2019, and the parties in *Martinez-Brooks v. Easter* identified him as being at higher risk for severe illness from COVID-19 due to his severe obesity. Gov't's Opp'n, ECF No. 232 at 30 n.17. Having reviewed Mr. Evans' medical records, the Court observes that Mr. Evans' weight has changed. *See* Gov't's Sealed Ex. A, ECF No. 233-1 at 3, 5; *see also* Gov't's Sealed Ex. H, ECF No. 233-8 at 2. But the precise weight of Mr. Evans does not detract from his medical conditions, taken together, that place him at heightened risk of severe illness or death from COVID-19. *See United States v. White*, No. 13-cr-20653-1, 2020 WL 2557077, at *5 (E.D. Mich. May 20, 2020) (finding that the combination of defendant's obesity and hypertension constituted an "extraordinary and compelling reason" for his release where the defendant was 5'8'' and weighed 254 pounds with a BMI of 38.6).

---

The CDC makes clear that obesity, defined as a BMI of 30 or above, increases a person's risk of severe illness from COVID-19. *Id*.

10

Courts have found that "extraordinary and compelling reasons" exist where the combination of a defendant's physical and medical conditions, including hypertension, high blood pressure, obesity, and sleep apnea, constitutes a serious medical condition and substantially diminishes the ability of the defendant to provide self-care within a prison. *See, e.g.*, *United States v. Jackson*, No. 02-cr-30020, 2020 WL 2735724, at *3 (W.D. Va. May 26, 2020) (finding extraordinary and compelling reasons where the defendant suffered from type 2 diabetes, asthma, sleep apnea, and obesity); *United States v. Scparta*, No. 18-cr-578 (AJN), 2020 WL 1910481, at *9 (S.D.N.Y. Apr. 20, 2020) (finding extraordinary and compelling reasons based on the defendant's hypertension, sleep apnea, high blood pressure, and high cholesterol); *United States v. Gross*, No. 15-cr-769 (AJN), 2020 WL 1673244, at *1 (S.D.N.Y. Apr. 6, 2020) (finding that "the combination of [defendant's] health conditions and his incarceration compounds the risk COVID-19 poses to him, placing him in particularly grave danger" (internal citation and quotation marks omitted)). None of Mr. Evans' medical conditions alone constitute an extraordinary and compelling reason justifying compassionate release. When taken together, however, Mr. Evans' medical conditions increase his risk for severe illness from COVID-19.

What is more, Mr. Evans is incarcerated at FCI Danbury,

11

which is the site of a COVID-19 outbreak. *See Martinez-Brooks*, 2020 WL 2405350, at *20 ("It is undisputed that there is an active and serious outbreak of COVID-19 at FCI Danbury."); *see also* Gov't's Opp'n, ECF No. 232 at 15 n.9 (noting that the Attorney General has singled out FCI Danbury as one of the BOP facilities where COVID-19 has impacted prison operations). Judge Shea identified a number of deficiencies in BOP's response to COVID-19 at FCI Danbury, noting that "[t]he extent to which the Warden has implemented adequate measures to control the COVID-19 outbreak at FCI Danbury and protect inmates is hotly disputed[.]" *Martinez-Brooks*, 2020 WL 2405350, at *4. Judge Shea found that "true social distancing appears to be unachievable at FCI Danbury, creating an environment where the risk of transmission is significantly heightened." *Id*. at *5.

Judge Shea observed that "sixty-nine inmates at FCI Danbury have tested positive, out of an inmate population of approximately 1,000. But this figure may well understate the true number of COVID-19 cases at FCI Danbury, in light of the limited testing that has been conducted." *Id*. at *4 (citation omitted). To make matters worse, at least "[o]ne inmate has died since the [COVID-19] crisis began." *Id*. As Judge Shea explained, all of those circumstances supported the issuance of the Temporary Restraining Order, "which requires the Warden . . . to explain why, apparently, no consideration is being given in this

12

process to the serious risk of illness or death posed to the medically vulnerable subclass." *Id*. at \*26. This Court therefore finds that Mr. Evans' medical conditions, in combination with the active COVID-19 outbreak at FCI Danbury and the ongoing COVID-19 pandemic, constitute "extraordinary and compelling reasons" for compassionate release under Section 3582(c)(1)(A)(i).

Having found that Mr. Evans satisfies his burden of demonstrating extraordinary and compelling reasons, "the Court must reassess the sentencing factors that Congress established at 18 U.S.C. § 3553(a) to the extent applicable, including the need for the sentence imposed 'to protect the public from further crimes of the defendant,' and any such reduction must likewise be consistent with the Sentencing Commission's expressed policy concern about the release of dangerous offenders" as outlined in U.S.S.G. § 1B1.13(2). *Johnson*, 2020 WL 3041923, at \*11 (quoting 18 U.S.C. § 3553(a)(2)(C)). The applicable Section 3553(a) factors—including the nature and circumstances of the offense, 18 U.S.C. § 3553(a)(1); the defendant's history and characteristics, *id.*; and the need for the sentence imposed to reflect the seriousness of the offense, afford adequate deterrence to criminal conduct, and protect the public from the defendant's further crimes, *id*. § 3553(a)(2)(A)-(C)—strongly weigh against a reduction from the sixty-month term

of imprisonment to time served.[5]

With regard to the nature and circumstances of the offense, on September 19, 2018, Mr. Evans pled guilty to Count Two of the Indictment, charging him with Interference with Interstate Commerce by Extortion, and Aiding and Abetting and Causing and Act to Be Done, in violation of 18 U.S.C. §§ 1951(a) and 2. Plea Agreement, ECF No. 73 at 1 ¶ 1. The nature of Mr. Evans' offense is serious. It is undisputed that "[Mr. Evans' guilty] plea and sentence in this case were based on his participation in a manipulative and sinister extortion, fraud, and money laundering scheme with members of his family and others that resulted in Daniel Zancan embezzling more than $4.2 million from his D.C. employer and its subsidiary." Gov't's Opp'n, ECF No. 232 at 33.

Mr. Evans concedes that he threatened Mr. Zancan and Mr. Zancan's family. According to the government, Mr. Evans

---

[5] Mr. Evans requests that this Court "grant him compassionate release under house arrest until a vaccine is developed sometime this winter, at which time, [he] will return to prison to finish his sentence." Def.'s Mot., ECF No. 229 at 11. The Court lacks the authority to temporarily release Mr. Evans. See Order, *United States v. Evans*, No. 18-103 (EGS) (D.D.C. Apr. 10, 2020), ECF No. 225 at 6, 8. "Section 3582(c) only permits [the Court] to 'reduce' a term of imprisonment, not to resentence." *United States v. Ng Lap Seng*, No. 15-cr-706 (VSB), 2020 WL 2301202, at *8 (S.D.N.Y. May 8, 2020) (citation omitted). "Thus, the only way to grant [Mr. Evans] the relief [he] seeks (*i.e.*, release from prison) under Section 3582(c) is to reduce [his] sentence to time served — in other words, to *permanently* release [him]." *United States v. Roberts*, No. 18-cr-528-5 (JMF), 2020 WL 1700032, at *3 (S.D.N.Y. Apr. 8, 2020).

inflicted "psychological turmoil" on Mr. Zancan. Gov't's Mem. in Aid of Sentencing, ECF No. 105 at 1. Mr. Evans "impersonated a mobster while asking Daniel Zancan, 'Do I need to tell you where your kids go to school? Do I need to tell you where you live?'" *Id*. As part of the scheme, Mr. Evans received from Mr. Zancan, among other things, gold bars worth approximately $1.6 million. Statement of Offense ("SOF"), ECF No. 74 at 9 ¶ 14(hh). Mr. Evans and his co-conspirators purchased jewelry, watches, and gold coins with the ill-gotten funds. *Id*. at 6 ¶ 14(o), 9 ¶ 14(mm & oo), 10 ¶ 14(uu). Mr. Evans wired $195,000 to a car dealership for the purchase of a 2009 Rolls Royce Phantom. *Id*. at 11 ¶ 14(vv). The Court finds that the nature and circumstances of the offense strongly favor incarceration.

In imposing the sentence, the Court considered Mr. Evans' history and characteristics, including his family support. *See* Sentencing Hr'g Tr. (Apr. 8, 2019), ECF No. 161 at 51-52. Mr. Evans, who is thirty-one years old, described himself as a "good father to his children." Def.'s Mem. in Aid of Sentencing, ECF No. 111-1 at 10. Mr. Evans and his wife have three children. PSR, ECF No. 99 at 21 ¶ 94. And Mr. Evans has no prior criminal convictions. *Id*. at 7 ¶ 23.

The Court cannot find that Mr. Evans' history and characteristics weigh in favor of reducing his sentence. His parents (Candy Evans and Archie Kaslov) and his siblings (Robert

15

Evans and Corry Blue Evans) are co-defendants in this case. PSR, ECF No. 99 at 20 ¶¶ 89-90. Mr. Evans indicated that his parents financially supported him. *Id.* at 23 ¶ 109. But Mr. Evans admitted that his relationship with his family has deteriorated. Def.'s Mem. in Aid of Sentencing, ECF No. 111-1 at 10. Between 2015 and 2017, Mr. Evans worked with "his father's scrap business in which they collected metal and other items for recycle." PSR, ECF No. 99 at 23 ¶ 110. Mr. Evans was unemployed at the time of sentencing, and he did not report a history of documented employment. *Id.* at 23 ¶¶ 108-109.

Mr. Evans' sixty-month term of imprisonment reflects the seriousness of the offense, which counsels against a sentence reduction. *See* 18 U.S.C. § 3553(a)(2)(A). On April 8, 2019, the Court sentenced Mr. Evans to a sixty-month prison term, to be followed by three years of supervised release, and ordered restitution in the amount of $4,217,542.86. J., ECF No. 132 at 2-3, 6. The Court entered a forfeiture money judgment against him in the amount of $3,119,010. Final Order of Forfeiture, ECF No. 132-1 at 1-6.

During the sentencing hearing, the government explained Mr. Evans' efforts to assist the government, including his decision to voluntarily turn over gold bars that were hidden in a can with paint when the FBI conducted a search of his apartment. *See* Sentencing Hr'g Tr., ECF No. 161 at 16. The Court

agreed that Mr. Evans should receive some credit for assisting the government in recovering the gold bars, voluntarily turning over assets, and participating in debriefing sessions. *Id.* at 52. The Court credited Mr. Evans' acceptance of responsibility. *Id.* at 51. Nonetheless, the Court imposed the sixty-month term of imprisonment, which was within the advisory Sentencing Guidelines range. In doing so, the Court stated that "a sentence of 60 months is appropriate, and [the Court] think[s] it sends the right message to others, that people who participate in ventures of this type, whether it be a small business corporation or large business, run the risk of being incarcerated, even though they have assisted to a certain respect the government." *Id.* And the sentence continues to afford adequate deterrence to criminal conduct and protect the public from further crimes of Mr. Evans. *See* 18 U.S.C. § 3553(a)(2)(B) & (C).

As to Mr. Evans' dangerousness, the government argues—and the Court agrees—that Mr. Evans "has not sufficiently demonstrated that he is no longer a danger to public safety." Gov't's Opp'n, ECF No. 232 at 33 (citation omitted). Mr. Evans' threats to Mr. Zancan and his children are troubling. Mr. Evans fails to address whether his criminal conduct no longer poses a danger to the community. *See generally* Def.'s Mot., ECF No. 229; *see also United States v. Jackson*, No. 19-cr-347 (TNM), 2020 WL

17

3402391, at *7 (D.D.C. June 19, 2020) (finding that a defendant's dangerousness favored continued detention where he "offered no persuasive reason why the Court should find that he no longer poses a danger"). Given the gravity of the offense and the circumstances of the underlying criminal conduct, the Court is not persuaded that Mr. Evans would not pose a danger to the community upon his release. *See Johnson*, 2020 WL 3041923, at *11; *see also* U.S.S.G. § 1B1.13(2).

As BOP endeavors to comply with Judge Shea's rulings in *Martinez-Brooks*, the Court is mindful that COVID-19 poses a serious risk to Mr. Evans due to his medical conditions. The Court cannot grant Mr. Evans' requested relief, however. In considering the applicable Section 3553(a) factors and Mr. Evans' dangerousness, the Court finds that granting his motion for compassionate release would be inconsistent with the Section 3553(a) factors. *See, e.g.*, *United States v. Sears*, No. 19-cr-21 (KBJ), 2020 WL 3250717, at *3 (D.D.C. June 16, 2020) (finding that the Section 3553(a) factors weighed against compassionate release despite extraordinary and compelling reasons justifying release); *United States v. Carter*, No. 18-cr-390 (PAE), 2020 WL 3051357, at *3 (S.D.N.Y. June 8, 2020) (same). The Court concludes that a reduction in the previously imposed term of imprisonment would not comport with Section 3553(a)'s purposes of punishment. *See* 18 U.S.C. § 3553(a).

18

Accordingly, it is hereby

**ORDERED** that Defendant's Motion for Compassionate Release, ECF No. 229, is **DENIED**.

**SO ORDERED.**

**Signed:    Emmet G. Sullivan
            United States District Judge
            June 30, 2020**